# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP60-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Tim Osicka, Attorney at Law: |

Office of Lawyer Regulation,
          Complainant,
     v.
Tim Osicka,
          Respondent.

---

DISCIPLINARY PROCEEDINGS AGAINST OSICKA

---

| | |
|---|---|
| OPINION FILED: | June 6, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | ABRAHAMSON, C.J., concurs. (Opinion filed.) |
| DISSENTED: | PROSSER, J., dissents. (Opinion filed.) |
| NOT PARTICIPATING: | BRADLEY, J., did not participate. |

ATTORNEYS:

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP60-D

STATE OF WISCONSIN : IN SUPREME COURT

In the Matter of Disciplinary Proceedings
Against Tim Osicka, Attorney at Law:

Office of Lawyer Regulation,

      Complainant,

   v.

Tim Osicka,

      Respondent.

**FILED**

**JUN 6, 2014**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review Reserve Judge Robert E. Kinney's recommendation that this court suspend Attorney Tim Osicka's license to practice law in Wisconsin for a period of 60 days for professional misconduct. The referee also recommended that Attorney Osicka be required to pay restitution to an injured client, and that he pay the costs of this proceeding.

¶2 Because no appeal has been filed, we review the referee's report pursuant to SCR 22.17(2).[1] After conducting our independent review of the matter, we accept and adopt the referee's findings of fact, which were based on the allegations of the complaint filed by the Office of Lawyer Regulation (OLR), due to Attorney Osicka's default. We agree that the OLR is entitled to a default judgment, and we determine that Attorney Osicka's misconduct warrants a suspension of 60 days. We impose the full costs of this proceeding on Attorney Osicka. The costs totaled $1,579.97 as of July 30, 2012.

¶3 Attorney Osicka was admitted to practice law in Wisconsin in 1986. His Wisconsin law license is currently suspended for noncompliance with continuing legal education (CLE) requirements, for nonpayment of bar dues, for failing to comply with the trust account certification requirement, and for failing to cooperate with the OLR's investigation.

¶4 Attorney Osicka has been the subject of prior professional discipline. In 2002 this court publicly reprimanded Attorney Osicka for failing to communicate adequately with his client, failing to act with reasonable

---

[1] SCR 22.17(2) states:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

diligence, failing to provide competent representation, making statements regarding the integrity of a judge with reckless disregard for truth or falsity, and violating the attorney's oath by disrespecting the court. Public Reprimand of Tim Osicka, No. 2002-02. In 2009 this court publicly reprimanded Attorney Osicka for willfully failing to disclose information to the OLR during a grievance investigation and failing to comply promptly with a client's requests for information. In re Disciplinary Proceedings Against Osicka, 2009 WI 38, 317 Wis. 2d 135, 765 N.W.2d 775. In 2010 this court publicly reprimanded Attorney Osicka for failing to deposit a client's advance fee into a client trust account, failing to communicate adequately with his client, failing to either refund the unearned portion of an advance fee or provide an accounting to the client upon termination of representation, and engaging in the unauthorized practice of law by practicing law when his law license was suspended for nonpayment of State Bar dues. Public Reprimand of Tim Osicka, No. 2010-OLR-7.

¶5 On January 11, 2012, the OLR filed the current complaint against Attorney Osicka. It alleges four counts of professional misconduct, all involving Attorney Osicka's representation of A.L.'s minor daughter.

¶6 The complaint alleges that in September 2008, A.L. retained Attorney Osicka to represent her minor daughter on a delinquency petition filed in Marathon County circuit court. The minor had been arrested for marijuana possession as a

juvenile, and A.L. sought to minimize her daughter's potential punishment.

¶7 Attorney Osicka charged A.L. a $750 advance fee, which A.L. paid. Attorney Osicka and A.L. entered into a fee agreement which provided, "Client agrees to pay a flat fee of $750 for this service. That fee, upon payment, becomes the property of the law firm. It will be deposited in Attorney's business account, rather than the firm's trust account, and Client hereby specifically agrees that Attorney may do so."

¶8 Attorney Osicka did not place any of the advanced fees in trust, nor did he provide any of the notices required under SCR 20:1.15(b)(4m)[2] for the alternative treatment of advanced fees.

---

[2] SCR 20:1.15(b)(4m) states as follows: Alternative protection for advanced fees.

A lawyer who accepts advanced payments of fees may deposit the funds in the lawyer's business account, provided that review of the lawyer's fee by a court of competent jurisdiction is available in the proceeding to which the fee relates, or provided that the lawyer complies with each of the following requirements:

a. Upon accepting any advanced payment of fees pursuant to this subsection, the lawyer shall deliver to the client a notice in writing containing all of the following information:

1. the amount of the advanced payment;

2. the basis or rate of the lawyer's fee;

3. any expenses for which the client will be responsible;

4. that the lawyer has an obligation to refund any unearned advanced fee, along with an accounting, at the termination of the representation;

5. that the lawyer is required to submit any unresolved dispute about the fee to binding arbitration within 30 days of receiving written notice of such a dispute; and

6. the ability of the client to file a claim with the Wisconsin lawyers' fund for client protection if the lawyer fails to provide a refund of unearned advanced fees.

b. Upon termination of the representation, the lawyer shall deliver to the client in writing all of the following:

1. a final accounting, or an accounting from the date of the lawyer's most recent statement to the end of the representation, regarding the client's advanced fee payment with a refund of any unearned advanced fees;

2. notice that, if the client disputes the amount of the fee and wants that dispute to be submitted to binding arbitration, the client must provide written notice of the dispute to the lawyer within 30 days of the mailing of the accounting; and

3. notice that, if the lawyer is unable to resolve the dispute to the satisfaction of the client within 30 days after receiving notice of the dispute from the client, the lawyer shall submit the dispute to binding arbitration.

c. Upon timely receipt of written notice of a dispute from the client, the lawyer shall attempt to resolve that dispute with the client, and if the dispute is not resolved, the lawyer shall submit the dispute to binding arbitration with the State Bar Fee Arbitration Program or a similar local bar association program within 30 days of the lawyer's receipt of the written notice of dispute from the client.

d. Upon receipt of an arbitration award requiring the lawyer to make a payment to the client, the lawyer

¶9 Attorney Osicka negotiated with Marathon County's district attorney and social services department on the minor's behalf, and the parties agreed to a consent decree. The parties scheduled a court hearing for November 21, 2008, to consider the consent decree.

¶10 On or about November 17, 2008, Attorney Osicka met with A.L., and A.L. signed the decree.

¶11 On November 19, 2008, Attorney Osicka informed A.L. that he would be appearing in an out-of-town court on the day of the hearing, that he would be calling the court in Marathon County at the appointed time to discuss the decree, and that A.L. and her daughter should attend the hearing. Attorney Osicka explained the hearing's purpose to A.L. and the minor.

¶12 Attorney Osicka did not appear at the hearing, however, because he learned that the State Bar of Wisconsin had administratively suspended his law license for his failure to pay mandatory dues and assessments. Attorney Osicka informed the district attorney that he would not attend the hearing to consider the consent decree. A.L. and her daughter appeared at the hearing, only to be advised by the court that Attorney Osicka's license had been suspended, that A.L. needed to find another attorney on behalf of her daughter, and that the matter would need to be rescheduled.

---

shall pay the arbitration award within 30 days, unless the client fails to agree to be bound by the award of the arbitrator.

6

¶13 Attorney Osicka paid his State Bar dues by credit card and forwarded a required trust account certification to the State Bar. The State Bar reinstated Attorney Osicka's law license on November 24, 2008.

¶14 In the meantime, the circuit court appointed a different lawyer as the minor's attorney. This lawyer successfully negotiated a consent decree with the State and the county's social services department, and the circuit court approved the decree on December 23, 2008.

¶15 Attorney Osicka did not refund any advanced fees to A.L. for his representation of the minor.

¶16 A.L. filed a grievance against Attorney Osicka. The OLR forwarded a notice of formal investigation to Attorney Osicka, requiring Attorney Osicka to respond fully and fairly to the grievance.

¶17 Attorney Osicka submitted a partial response to the notice of formal investigation. In his response, Attorney Osicka noted that he had successfully negotiated a consent decree for the minor, that he had been initially unaware of his suspension, and that he was unable to appear in court on the minor's behalf. Attorney Osicka did not reply to allegations that his conduct may have violated certain rules of professional conduct. In addition, Attorney Osicka did not provide the OLR with a copy of his file, as had been requested of him. The OLR sent Attorney Osicka a supplemental investigative letter, to which Attorney Osicka did not respond.

7

¶18 On January 11, 2012, the OLR filed the complaint in the present case. The OLR's complaint alleged four separate counts of misconduct. Count One alleged that by failing to deposit the $750 into his trust account and instead depositing the money into his law firm operating account, with no evidence he intended to utilize the alternative fee placement procedures permitted by SCR 20:1.15(b)(4m), Attorney Osicka violated SCR 20:1.15(b)(4).[3] Count Two alleged that by accepting a $750 fee for a representation he did not complete, Attorney Osicka charged an unreasonable fee, in violation of SCR 20:1.5(a).[4]

---

[3] SCR 20:1.15(b)(4) states as follows:  Unearned fees and cost advances.

> Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[4] SCR 20:1.5(a) provides:

> A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;

Count Three alleged that by failing to refund unearned fees to A.L., Attorney Osicka violated SCR 20:1.16(d).[5]  Count Four alleged that by failing to provide relevant information to the OLR in a timely fashion and by failing to answer questions fully in response to the OLR's investigation, Attorney Osicka violated SCR 22.03(2) and (6)[6] enforceable through SCR 20:8.4(h).[7]  The

---

    (4) the amount involved and the results obtained;

    (5) the time limitations imposed by the client or by the circumstances;

    (6) the nature and length of the professional relationship with the client;

    (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

    (8) whether the fee is fixed or contingent.

[5] SCR 20:1.16(d) states:

    Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[6] SCR 22.03(2) and (6) state:

    (2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise.  The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response.

OLR sought a 60-day suspension and an order requiring Attorney Osicka to pay restitution to A.L. in the amount of $750.

¶19 The OLR made multiple unsuccessful attempts to serve the complaint and order to answer on Attorney Osicka, both via personal service and via certified mail. Having made reasonably diligent attempts to serve Attorney Osicka, the OLR moved for a finding of default. Notice of the hearing on the OLR's default motion was sent to the last known address Attorney Osicka had provided to the State Bar of Wisconsin, but Attorney Osicka did not respond or appear at the hearing. On June 18, 2012, Referee Kinney granted the OLR's default motion.

¶20 The referee subsequently filed a report finding the facts as alleged in the OLR's complaint and concluding that

The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[7] SCR 20:8.4(h) says it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

Attorney Osicka had committed each of the four counts of misconduct. Based on the conclusions of misconduct, the referee recommended that Attorney Osicka's license to practice law in this state be suspended for 60 days. The referee also recommended that Attorney Osicka be ordered to pay restitution to A.L. in the amount of $750.

¶21 Attorney Osicka did not appeal from the referee's report and recommendation. Thus, we proceed with our review of the matter pursuant to SCR 22.17(2). We review a referee's findings of fact subject to the clearly erroneous standard. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. We review the referee's conclusions of law de novo. Id. We determine the appropriate level of discipline independent of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶22 In light of Attorney Osicka's failure to appear or participate in this case, we accept the referee's recommendation and agree that Attorney Osicka has defaulted. In light of Attorney Osicka's default, we accept the allegations set forth in the complaint as true and conclude that the OLR has met its burden of proof with respect to the allegations in the complaint.

¶23 The referee's findings of fact have not been shown to be clearly erroneous, and we adopt them. We also agree with the referee's conclusions of law, and we agree with the referee's recommendation for a 60-day suspension of Attorney Osicka's

license to practice law. Finally, we agree with the referee's recommendation that Attorney Osicka be required to pay the costs of this proceeding.

¶24 IT IS ORDERED that the license of Tim Osicka to practice law in Wisconsin is suspended for a period of 60 days effective the date of this order.

¶25 IT IS FURTHER ORDERED that Tim Osicka shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶26 IT IS FURTHER ORDERED that within 60 days of the date of this order, Tim Osicka shall pay restitution to his former client, A.L., in the amount of $750.

¶27 IT IS FURTHER ORDERED that within 60 days of the date of this order, Tim Osicka shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶28 IT IS FURTHER ORDERED that the restitution is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶29 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.28(2).

¶30 ANN WALSH BRADLEY, J., did not participate.

¶31 SHIRLEY S. ABRAHAMSON, C.J. *(concurring).* I join the per curiam opinion.

¶32 Although Attorney Osicka's repeated violations of the Rules of Professional Conduct for Attorneys in the present case are not the most horrific the court has encountered, Attorney Osicka did harm his clients. (And this is not the first time. Attorney Osicka is a repeat offender.) His clients have registered complaints and they want to be assured that this court's lawyer discipline system cares about them as victims of an attorney's misconduct and that the court will provide the victims with relief.

¶33 Victims do not expect the court to ignore them and to treat them as not important enough to redress their grievances. Victims of attorney misconduct deserve OLR's and the court's attention.

¶34 I turn to a procedural issue relating to current OLR practice.

¶35 The OLR filed another complaint against Attorney Osicka on February 25, 2013, about a year after filing the complaint in the present case. See OLR v. Osicka, 2014 WI 34, ___ Wis. 2d ___, ___ N.W.2d ___. The OLR filed the complaint that is the subject of the present proceedings against Attorney Osicka on January 11, 2012. The same referee presided over both proceedings against Attorney Osicka. The referee's report and recommendation in the second action is dated August 23, 2013 and is an open public file.

1

¶36 I note here that the referee commented critically as follows about the OLR filing two complaints within about a year of each other complaining about conduct in which Attorney Osicka engaged during approximately the same time period. The referee stated:

> It is unclear why the matters involving [Attorney Osicka] resulted in the filing of two separate cases. . . . [E]verything else charged in the present Complaint . . . pre-dated the filing, on January 11, 2012, of the earlier complaint in 2012AP60-D, and the OLR had knowledge of all the violations at least several months before January 11, 2012 when the earlier Complaint was filed. . . . The point is, there should have been only one Complaint.

¶37 As I have written in OLR v. Johns, 2014 WI 32, ___ Wis. 2d ___, ___ N.W.2d ___, of even date, the OLR disciplinary system is about 15 years old. Several anomalies and proposed amendments have been brought to the court's attention. It is time for the court to institute a review of the system rather than to make piecemeal adjustments at this time.

¶38 The present case presents issues that should be considered in such a review.

¶39 For the reasons stated, I write separately.

¶40 DAVID T. PROSSER, J. *(dissenting).* Attorney Tim Osicka (Osicka) is not an angel. He has been disciplined on several occasions. Nonetheless, after looking at his recent prosecutions, one has to wonder whether Osicka's conduct warrants the zealous attention it has consistently received from the Office of Lawyer Regulation (OLR), or whether Osicka has simply become an easy target because he can no longer afford to defend himself. Osicka understands from experience that, unless he prevails on every allegation of misconduct against him, he will be required to pay all or substantially all costs of the OLR prosecution.

¶41 This policy has troubled me for years. The supreme court must be vigilant in protecting the public from attorneys who do not comply with the ethical obligations of the legal profession. But not all violations of the code of professional responsibility are equal in importance. Some violations are mala in se, others are merely mala prohibitum. Given its limited resources, OLR should give priority to the former and balance to the latter. In my view, it has not met that test in this case.

¶42 I write separately to discuss some background facts that put this mala prohibitum prosecution in perspective.

I

¶43 Osicka was the subject of a public reprimand in 2002. Public Reprimand of Tim Osicka, No. 2002-02. My concern here is

1

not with that prosecution but rather with four later efforts to prosecute him, of which this is the third.

A

¶44 "In 2009 this court publicly reprimanded Attorney Osicka for willfully failing to disclose information to the OLR during a grievance investigation and failing to comply promptly with a client's requests for information." Per Curiam op., ¶4 (citing In re Disciplinary Proceedings Against Osicka, 2009 WI 38, 317 Wis. 2d 135, 765 N.W.2d 775). This is true. What the Per Curiam does not explain is that the OLR filed four counts against Osicka and sought to suspend his license for 60 days. Although OLR failed to prove two of its four counts, the referee still recommended a 60-day suspension. Osicka was thus forced to appeal to this court. This court reduced the sanction to a public reprimand but socked Osicka with $10,116.17 in OLR costs. Osicka also had to pay for his own attorney. In short, Osicka had to pay the full costs of his defense and almost all costs of the OLR prosecution, even though he substantially prevailed. This was a crippling burden for a sole practitioner.

¶45 The critical events in the present case occurred in November 2008 during the OLR's prosecution of the 2009 disciplinary matter.

B

¶46 "In 2010 this court publicly reprimanded Attorney Osicka for failing to deposit a client's advance fee into a client trust account, failing to communicate adequately with his client, failing to either refund the unearned portion of an advance fee or provide an accounting to the client upon

2

termination of representation, and engaging in the unauthorized practice of law by practicing law when his law license was suspended for nonpayment of State Bar dues." Per Curiam op., ¶4 (citing Public Reprimand of Tim Osicka, No. 2010-OLR-7). Osicka claims that he provided little or no defense to these charges because of the high cost of defending himself.

¶47 With respect to this second of the four recent disciplinary matters, it should be noted that violations of the old trust account rule, with respect to advance fees, were commonplace among criminal defense attorneys and others whose work on cases quickly exhausted the advance fees. In fact, this court created an alternative to the standard trust account rule in response to the old rule's inflexibility. Although Osicka was found to have violated the old trust account rule, he was not required to refund any money to his client, implying that he had earned the whole advance fee.

¶48 The count involving the unauthorized practice of law——from October 31, 2008, through November 21, 2008——covers the critical period in the present case. Osicka claimed then that he sent a check to the State Bar office on November 3, 2008, for his dues payment. In the 2010 discipline case, the referee wrote: "There [is] no indication that the State Bar received Osicka's letter and the check was not negotiated." This language does not constitute a <u>finding</u> that Osicka never sent such a check, nor does it rule out the possibility that Osicka's check bounced because of insufficient funds.

C

3

¶49 In the present case, Osicka is found to have violated a revised version of the trust account rule, and he is subjected to "progressive" discipline. However, Osicka's new violation preceded the 2010 discipline as well as the 2009 discipline, and he is putting up no defense. He is once again defaulting, at least in part, to avoid costs.

¶50 The present prosecution also involves violations of SCR 20:1.5(a) and SCR 20:1.16(d).

¶51 Rule 20:1.5(a) provides in part: "A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses." SCR 20:1.5(a). The Per Curiam sums up this count, saying that "by accepting a $750 [advance] fee for a representation he did not complete, Attorney Osicka charged an unreasonable fee." Per Curiam op., ¶18. Here is the rest of the story. Osicka was retained by A.L. in September 2008 before he was told that he had been suspended for failing to pay his bar dues. Thereafter, he worked conscientiously to represent A.L.'s daughter and negotiated a consent decree with the district attorney for the benefit of the daughter. Paragraphs 6-12 of the Per Curiam show that Osicka's problems stemmed from his failure to timely pay his bar dues, not because he overcharged his client or did not diligently represent his client. Osicka paid his bar dues on November 21, 2009, by credit card. If, on November 21, the circuit court had accepted the consent decree as it had been negotiated, or if the court had rescheduled the hearing without appointing a new lawyer, there would have been no problem. It was the circuit

4

court's discretionary action that prevented Osicka from completing the representation.

¶52 On the third count, the referee concluded that Osicka violated a rule by failing to refund unearned fees, and Osicka was ordered to refund A.L.'s $750. This means that the referee determined that Osicka earned nothing for all his work and that because of the circuit court's decision to oust Osicka from the case, Osicka was required to refund his entire advance fee. This may be fair to A.L., who was forced to pay twice for the same service, but it was not fair to Osicka who is denied payment for service he performed.

¶53 The lesson to be learned from these counts is twofold: (1) always pay your bar dues on time, and (2) always defend yourself if you have a defense. For Osicka, however, the legitimacy of this response is affected by the costly result of his 2009 discipline. Now he is ordered to pay another $1,579.97 in costs in this case.

D

¶54 A fourth prosecution is pending. It was filed on February 25, 2013. This third prosecution was filed January 11, 2012, concerning events that occurred largely before the 2009 discipline. As the Per Curiam notes, Osicka's law license "is currently suspended for noncompliance with continuing legal education (CLE) requirements, for nonpayment of bar dues, for failing to comply with the trust account certification requirement, and for failing to cooperate with the OLR's investigation." Per Curiam op., ¶3.

5

¶55 The plain truth is that OLR knew Osicka had closed his law office and moved out of it no later than September 2011. In December 2011 OLR filed a sworn affidavit from one of its investigators alleging, on information and belief, that "Osicka has ceased practicing law." Thus, OLR knew Osicka had ceased practicing law before filing this case and before filing the fourth prosecution.

## II

¶56 Why is OLR continuing to file charges against an attorney who has ceased practicing law? Why is it piling up legal costs that it expects Osicka to pay?

¶57 These prosecutions raise questions about how OLR uses its limited resources to protect the public interest——questions about its priorities.

¶58 Because the answers to questions of this sort are seldom addressed, I feel compelled to respectfully dissent.